IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PETER DENTON and | § | |
| HARVEST INVESTORS, L.P., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-2559-N |
| | § | |
| RUDOLF SUTER, | § | |
| | § | |
| Defendant. | § | |

# ORDER

This Order addresses Plaintiffs Peter Denton and Harvest Investors, L.P.'s motion for confirmation of foreign arbitration award and entry of final judgment [8]. For the reasons that follow, the Court grants the motion to confirm the award, and the Court will convert the award from Swiss francs to United States dollars on the date of Court's judgement.

## I. ORIGINS OF THE CASE AND THE SWISS ARBITRATION AWARD

On or around June 1, 2007, Plaintiffs entered into separate Share Purchase Agreements ("SPAs") with Defendant Rudolf Suter. The SPAs contained an arbitration agreement providing that "[a]ll disputes arising out of the [SPAs] or relating thereto shall be resolved definitively by one or more arbitrators pursuant to the rules of the Arbitration Tribunal of the Chamber of Commerce of Switzerland" and that the venue would be Lucerne, Switzerland. Pls.' App. to Pls.' Mot. Confirm Arb. Award, Share Purchase Agreement 9 [1-3]. The parties also agreed that "the [SPAs] shall be governed solely by Swiss law . . . ." *Id.*

On or around June 29, 2009, Plaintiffs filed a request for arbitration with the Swiss Chamber of Commerce, and on or around January 22, 2010, Plaintiffs filed a statement of claim in arbitration. Between August 2010 and January 2011, the Swiss arbitration panel considered the parties' arguments and evidence. It declared the arbitration proceedings closed on January 18, 2011.

On June 21, 2011, the Chamber of Commerce of Central Switzerland, acting through arbitrators Michael Kramer, Urs Lischer, and Ernst F. Schmid, issued an award in favor of Plaintiffs (the "Swiss Award"). The award directs Defendant to:

   a.   pay Harvest Investors, L.P. CHF[1] 1,000,000 and interest thereon at a rate of 5% per annum as from June 2009 until payment;

   b.   pay Peter Denton, CHF 1,000,000 and interest thereon at a rate of 5% per annum as from June 29, 2009 until payment;

   c.   pay Plaintiffs CHF 3,000 in expenses of the Chamber of Commerce;

   d.   pay Plaintiffs CHF 31,010.20 (thirty-one thousand and ten Swiss francs 20/100) as fees and expenses of the arbitrators; and

   e.   pay Plaintiffs CHF 96,978.96 and USD 1,905.40 as Plaintiffs' costs.

Pls.' Br. Supp. of Pls.' Mot. Confirm Arb. Award 2-3 [hereinafter Pls.' Mot.]; *see* Pls.' App. to Pls.' Compl., Swiss Arb. Award 28-29 [1-5].

Plaintiffs now move to confirm the Swiss Award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), *see* 9 U.S.C. § 201, *et seq.*, and argue that the Court should use the federal reserve exchange rate

---

   [1]Swiss francs.

ORDER – PAGE 2

as of the date of the arbitration award to convert the award from Swiss francs to United States dollars.  *See* Pls.' Mot. 4-6.  Defendant does not oppose confirmation of the Swiss Award, but he contends that the Court should use the federal reserve exchange rate as of the date of his breach of the SPAs when converting the award to dollars.  *See* Def.'s Resp. 2-4.

## II. THE COURT GRANTS PLAINTIFFS' MOTION, AND IT WILL ISSUE JUDGMENT USING THE FEDERAL RESERVE EXCHANGE RATE ON THE DATE OF JUDGMENT

The New York Convention "provides that signatory nations are to recognize and enforce arbitral awards rendered in other nations," *Termorio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 933 (D.C. Cir. 2007) (quotation omitted), and United States federal law incorporates the treaty and governs its application in American courts, 9 U.S.C. § 201, *et seq.* 9 U.S.C. § 207 provides:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration.  The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

It is undisputed that the Swiss Award falls under the Convention.[2]

---

[2] The New York Convention applies to arbitral awards arising out of a commercial relationship where one party is not a United States citizen.  9 U.S.C. § 202.  Defendant Suter is a Swiss citizen.  Pls.' Compl. ¶ 3 [1].  And the Court takes judicial notice of the fact that both the United States and Switzerland are signatories to the New York Convention.  Pls.' Mot. 4 (citing OFFICE OF THE LEGAL ADVISOR, U.S. DEPT. OF STATE, TREATIES IN FORCE § 2, at 317-18 (2011), http://www.state.gov/documents/organization/169274.pdf).  Similarly, a contract "falls under" the Convention where: "(1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004) (internal quotation and citation omitted) (considering whether to order

The parties agree that the Court should confirm the Swiss Award under 9 U.S.C. § 207. *See* Pls. Mot. Confirm Arb. Award 4; Def.'s Resp. 1-4. And they do not dispute that the Court should use the federal reserve exchange rate[3] to convert the award from Swiss francs to United States dollars. *See* Pls.' Mot. Confirm Arb. Award 5-6; Def.'s Resp. .5-6. The only dispute they ask the Court to resolve is the effective date on which it should convert the Swiss Award to United States dollars.

When confirming a foreign arbitration award, the Fifth Circuit follows a judgment-day conversion rule – that is, a court should convert a foreign arbitration award fixed in foreign currency to United States dollars on the date it issues judgment. *See Sembawang Shipyard, Ltd. v. Charger, Inc.*, 955 F.2d 983, 990 (1992).[4] Other authorities also support applying the

---

arbitration); *see* 9 U.S.C. § 202.

[3]The Court takes judicial notice of the federal reserve exchange rate, which is available at http://www.federalreserve.gov/releases/h10/Hist/dat00_sz.htm.

[4]In *Sembawang Shipyard*, the Fifth Circuit affirmed the Eastern District of Louisiana's confirmation of an arbitration award from Singapore. 955 F.2d at 990. However, the Circuit remanded the case to the district court with instructions to modify its judgment to reflect the exchange rate between Singapore dollars and United States dollars on the date of judgment. *Id.* The district court had originally entered a $611,394.00 judgment, and the defendants moved to alter or amend that judgment to reflect that the "arbitrator's award was $611,394.00 Singapore dollars in U.S. currency, measured by the date of the arbitrator's award." *Sembawang Shipyard, Ltd. v. M/V Charger*, 1991 WL 40314, at *1 (E.D. La. 1991). The plaintiff contended that the court should measure the award by the exchange rate on the date the district court entered judgment. The district court did neither; instead, it used the conversion rate in effect on the date on which the arbitrator determined that defendants breached the contract, reasoning that the breach-day rate "w[ould] compensate [plaintiff] most precisely for its loss." *Id.* The Fifth Circuit, however, held that the judgment-day conversion rule applied instead, reasoning that, under its jurisprudence, "[a]n obligation governed by the laws of a foreign country and fixed in a foreign currency is converted by our courts at the rate in effect on the day of judgment." 955 F.2d at 990 (citing inter alia *Paris*

ORDER – PAGE 4

judgment-day rule when confirming foreign arbitration awards. *See, e.g.*, *Fils et Cables d'Acier de Lens v. Midland Metals Corp.*, 584 F. Supp. 240, 247 (S.D.N.Y. 1984); *Laminoirs-Trefileries-Cableries de Lens, S.A. v. Southwire Co.*, 484 F. Supp. 1063, 1070 (D. Ga. 1980); *Island Territory of Curacao v. Solitron Devices, Inc.*, 356 F. Supp. 1, 14 (S.D.N.Y. 1973); RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 481 cmt. 8 (1987). Comment 8 to section 481 of the Restatement counsels that,

> [i]f an action is brought in a court in the United States to enforce a foreign judgment denominated in a currency other than United States dollars, the court will generally convert the judgment to United States currency as of the date of the judgment granting enforcement. . . . The same rule applies in respect of enforcement of an arbitral award in accordance with § 487[, Recognition And Enforcement Of Foreign Arbitral Agreements And Awards].

RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 481, cmt. 8 (collecting cases);[5] *see also, e.g.*, 3 THOMAS H. OEHMKE & JOAN M. BROVINS, COMMERCIAL ARBITRATION § 120:11

---

*v. Central Chiclera S. de R.L.*, 193 F.2d 960, 962-63 (5th Cir. 1952) and *Jamaica Nutrition Hldgs., Ltd. v. United Shipping Co.*, 643 F.2d 376, 380-81 (5th Cir. 1981)). There, as here, the obligation "[wa]s governed by the laws of [the foreign country] and [wa]s fixed in [foreign currency]." *Id.*

[5]Plaintiffs rely on Restatement section 823 to support their argument that the Court should use the date of the Swiss Award as the date of conversion. Section 823 provides that,
> [i]f, in a case arising out of a foreign currency obligation, the court gives judgment in dollars, the conversion from foreign currency to dollars is to be made at such rate as to make the creditor whole and to avoid rewarding a debtor who has delayed in carrying out the obligation.

RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 823. However, section 823 applies to cases in which the obligation on which the suit is based arises in a foreign currency and the American court itself adjudicates the suit. *See id.* cmt. 2; *Id.* § 481 cmt. 8. For example, section 823 would apply in a breach of contract case adjudicated in the United States where the contract at issue provided for payment in euros. *See, e.g.*, *Siematic Mobelwerke GmbH & Co. KG v. Siematic Corp.*, 669 F. Supp. 2d 538 (E.D. Pa. 2009). Section 481 and the above-cited cases are more relevant here.

(3d ed. 2011); 2 LARRY E. EDMONSON, DOMKE ON COMMERCIAL ARBITRATION § 35:4 (3d ed. 2012). *But see G.E. Transp. S.P.A. v. Republic of Alb.*, 693 F. Supp. 2d 132, 139-40 (D.D.C. 2010) (granting plaintiffs' motion for default judgment and confirmation of arbitration award and converting euros to dollars on the date of the arbitration award). Accordingly, the Court will use the judgment-day rule, and it will convert the Swiss Award from francs to dollars on the date of judgment.[6]

## CONCLUSION

The Court grants Plaintiffs' motion to confirm the Swiss Award, and it will grant judgment in United States dollars using the federal reserve rate to convert the Award from francs to dollars on the date of judgment.

---

[6]Defendant cites to *Competex, S.A. v. Labow*, 783 F.2d 333 (2d. Cir. 1986), to support his argument that the Court should convert the Swiss Award to United States dollars on the date of the breach. However, *Comptex* is largely inapplicable to this case, and its reasoning actually supports the judgment-day rule. *Comptex* involved the Second Circuit's review of the district court's ruling on a Federal Rule of Civil Procedure 60(b) motion. *Id.* at 334. In the underlying suit, the plaintiff sought enforcement of a British judgment in which the federal court's jurisdiction was based on the parties' diversity. To determine the conversion rate, the district court looked to New York state law, which, at the time, followed a breach-day rule for currency conversion, and entered judgment in United States dollars. *Id.* (New York has since converted to a judgment-day rule. *See Seimatic Mobelwerke GmbH*, 669 F. Supp. 2d at 542.) The defendant moved for clarification of the judgment under Rule 60(b) and a declaration that he could satisfy the judgment in British Pounds, and he paid the judgment in pounds while his Rule 60(b) motion was pending. *Id.* at 335. The district court denied the Rule 60(b) motion and held that the defendant could satisfy his judgment only by paying the United States dollar amount specified in its judgment. *Id.* The Second Circuit affirmed the district judge's ruling on the Rule 60(b) motion alone, but it suggested that a different method to determine the date of conversion from English pounds to United States dollars would be preferable. *See id.* at 335-39. The Second Circuit posited that the judgment-day rule, which the Court applies here, would be more neutral. *Id.* at 338-39.

Signed August 23, 2012.

_____
David C. Godbey
United States District Judge