IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PETER DENTON and HARVEST INVESTORS, L.P., | § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:11-cv-2559-N |
| RUDOLF SUTER, | § § | |
| Defendant. | § § | |

**AMENDED FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

Plaintiffs Peter Denton and Harvest Investors, L.P. ("Plaintiffs") have filed a Second Motion for Sanctions, Contempt and to Compel. *See* Dkt. No. 160 (the "Second Contempt Motion"). United States District Judge David C. Godbey has referred all post-judgment discovery disputes in this case to the undersigned United States magistrate judge pursuant to 28 U.S.C. § 636(b). *See* Dkt. No. 128.

Defendant Rudolf Suter ("Defendant" or "Suter") filed a written response to the Second Contempt Motion, *see* Dkt. No. 162, and Plaintiffs filed a reply, *see* Dkt. No. 163.

After resetting the hearing on Plaintiffs' Second Contempt Motion at Defendant's request, *see* Dkt. Nos. 161 & 165, the Court held a hearing on the Second Contempt Motion on January 8, 2016, *see* Dkt. No. 166. Plaintiffs' counsel appeared as ordered, but Defendant did not appear for the hearing as ordered, *see* Dkt. No. 167.

The undersigned WITHDRAWS the Findings, Conclusions, and

-1-

Recommendation of the United States Magistrate Judge [Dkt. No. 168] entered on January 15, 2016 and issues the following amended findings of fact, conclusions of law, and recommendation on the Second Contempt Motion and, pursuant to 28 U.S.C. § 636(e)(6), certifies facts that, in the undersigned's opinion, show that Defendant Rudolph Suter's conduct constitutes a violation of this Court's orders for which Defendant Rudolph Suter should be cited to appear before Judge Godbey and show cause why he should not be held in civil contempt and be subject to appropriate judicial sanctions.

## Background

On August 23, 2012, the Court entered a Final Judgment in favor of Plaintiffs against Defendant Rudolph Suter as well as an order granting Plaintiffs' motion for confirmation of a foreign arbitration award, which was the subject of this action. *See* Dkt. Nos. 14 & 16.

Since the time of entry of the Final Judgment, Plaintiffs have sought postjudgment discovery from Defendant, and Defendant's responses to Plaintiffs' discovery demands, as well as Plaintiffs' attempts to execute on the Final Judgment, have resulted in numerous ongoing disputes between the parties in this matter.

As far as the undersigned is aware, Defendant has not satisfied any amount of the Final Judgment. As the Court previously noted, "Defendant is a resident of Switzerland; a substantial portion of the [previous] discovery disputes relate[d] to Defendant's position that Swiss law prevents him from providing Plaintiffs with much of the information they seek." Dkt. No. 83 at 2.

On January 21, 2014, Defendant filed a Notice of Bankruptcy Filing, informing the Court that Defendant Rudolf Suter filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Texas on January 17, 2014, in cause number 14-30364-7, with the debtor being Rudolf Suter. See Dkt. No. 119. After receiving supplemental briefing, the Court ordered on February 27, 2014 that "[a]ll pending post-judgment matters in the case are STAYED and all pending deadlines and motions (Dkt. Nos. 49, 66, 92, & 121) are TERMINATED, subject to this stay's being lifted upon the motion of any party if the 11 U.S.C. § 362 automatic stay is lifted by the bankruptcy court, whether before or at the time that Mr. Suter's bankruptcy proceedings are concluded." Dkt. No. 125.

On November 10, 2014, Plaintiffs filed a Notice of Termination of Automatic Stay and Request to Proceed with Pending Motions, in which Plaintiffs reported that "[o]n April 11, 2014 the Plaintiffs in the above case filed a Complaint to Determine Objection to Discharge in the Suter bankruptcy case, being Adversary Proceeding No. 14-03046"; that "[o]n July 14, 2014 the United States Trustee filed a Complaint to Determine Objection to Discharge in the Suter bankruptcy case, being Adversary Proceeding No. 14-03101"; that, "[o]n October 6, 2014, the Debtor, Rudolf Suter filed a Motion for Waiver of Discharge in the bankruptcy case"; that "[o]n October 17, 2014 the United States Bankruptcy Court entered a Final Order Approving Waiver of Discharge by Rudolf Suter in the main bankruptcy case"; that "[o]n October 21, 2014 the United States Bankruptcy Court entered an Order Closing Adversary Pursuant to Order in 14-30364-SGJ-7 in both of the above adversary proceedings"; and that,

"[p]ursuant to 11 U.S.C. § 362(c)(2)(C) the automatic stay under the Bankruptcy Code is terminated upon the denial of the discharge" and therefore "is terminated without need for any motion or further order of the Bankruptcy Court." Dkt. No. 126 at 1-2. Plaintiffs therefore reported "that the lifting of the automatic stay allows for the resumption and continuation of post judgment activities in" this case. *Id.* at 2.

On November 14, 2014, the Court entered an Order stating that "[t]his will serve as an acknowledgment that the stay in this case has been lifted" and that, "[u]nder the authority of 28 U.S.C. § 636(b), Plaintiff's application for turnover and appointment of receiver [49 & 66], Defendant's counsel's second motion to withdraw [92], Plaintiff's fee application [108], Garnishee Pro Fit Optix, Inc.'s motion to dissolve writ of garnishment, dismiss plaintiff's application for writ [121], and any further post-judgment discovery disputes are hereby referred to United States Magistrate Judge David L. Horan for determination." Dkt. No. 128.

With regard to Plaintiffs' requested relief in their Second Contempt Motion, the Court previously entered a November 4, 2013 Order that granted Plaintiffs' prior Motion to Compel [Dkt. No. 24] and required Defendant Rudolf Suter to fully answer or supplement, and verify his answers under oath, to Interrogatory Nos. 10, 12, 14, 21, and 23 of Plaintiffs' First Set of Interrogatories and Interrogatory Nos. 34, 50, 51, 55, 68, 71, 72, and 78 of Plaintiffs' Second Set of Interrogatories by December 2, 2013. *See* Dkt. No. 94 at 12-20, 26. Likewise, in a December 24, 2014 Order Awarding Attorneys' Fees on Motion to Compel, the Court granted Plaintiffs' application for attorneys' fees [Dkt. No. 108] under Federal Rule of Civil Procedure 37(a)(5)(A) and ordered that

Defendant Rudolf Suter must pay Plaintiffs Peter Denton and Harvest Investors, L.P. the amount of $27,605.00 for payment of reasonable and necessary attorneys' fees by February 22, 2015. *See* Dkt. No. 141.

As of early September 2015, Defendant still had not fully answered or supplemented his answers to the interrogatories as ordered or paid the court-ordered Rule 37(a)(5) fee award. Accordingly, Plaintiffs filed a Motion for Sanctions, Contempt and to Compel. *See* Dkt. No. 149 (the "First Contempt Motion"). Plaintiffs' First Contempt Motion requested as relief that the Court enter an order

1. compelling Defendant Rudolf Suter to pay the attorneys' fees award, as set out in the December 24, 2014 Order Awarding Attorneys' Fees on Motion to Compel [Dkt. No. 141], to Plaintiffs within 10 business days of entry of an order on the First Contempt Motion, and, if Suter should fail to do so, imposing monetary sanctions against Suter in the amount of $100 per day until Suter has fully complied with the December 24, 2014 Order Awarding Attorneys' Fees on Motion to Compel;

2. compelling Suter to answer or supplement and verify his answers to Interrogatory Nos. 10, 12, 14, 21, and 23 of Plaintiffs' First Set of Interrogatories and Interrogatory Nos. 34, 50, 51, 55, 68, 71, 72 and 78 of Plaintiffs' Second Set of Interrogatories within ten business days of entry of an order on the First Contempt Motion, and, if Suter should fail to do so, imposing monetary sanctions against Suter in the amount of $100 per day until Suter has fully complied with answering or supplementation and verifying of his Answers to Plaintiffs' First and Second Sets of Interrogatories as set out in the November 4, 2013 Order; and

3. awarding Plaintiffs their costs and reasonable and necessary attorneys' fees incurred in preparing and presenting their Motion for Sanctions, Contempt and to Compel.

*See* Dkt. No. 149 at 6-7.

The Court held a hearing and oral argument on Plaintiffs' First Contempt Motion on October 19, 2015, and Plaintiffs' counsel and Defendant Rudolf Suter

personally appeared. *See* Dkt. No. 155.

At the hearing, Defendant did not contest that he had not fully answered or supplemented, and verified his answers under oath, to Interrogatory Nos. 10, 12, 14, 21, and 23 of Plaintiffs' First Set of Interrogatories and Interrogatory Nos. 34, 50, 51, 55, 68, 71, 72 and 78 of Plaintiffs' Second Set of Interrogatories, as the Court's November 4, 2013 Order required. And Defendant represented to the Court that he could and would do so within 10 business days of the date of an order granting Plaintiffs' Motion.

Accordingly, in an October 19, 2015 Order Granting Motion to Compel [Dkt. No. 158], the Court granted Plaintiffs' First Contempt Motion insofar as Defendant Rudolf Suter was ordered to fully answer or supplement his answers, and verify his answers under oath, to Interrogatory Nos. 10, 12, 14, 21, and 23 of Plaintiffs' First Set of Interrogatories and Interrogatory Nos. 34, 50, 51, 55, 68, 71, 72 and 78 of Plaintiffs' Second Set of Interrogatories, as required by the Court's November 4, 2013 Order [Dkt. No. 94], by November 2, 2015. *See* Dkt. No. 158 at 2-3. The Court's order further explained that, "[a]s the Court advised Defendant at the hearing, failure to do so will subject Defendant to possible sanctions and/or civil and/or criminal penalties for contempt of court." *Id.* at 3.

Further, at the October 19, 2015 hearing, Defendant did not contest that he had not paid Plaintiffs $27,605.00 under Rule 37(a)(5)(A) as required by the Court's December 24, 2014 Order Awarding Attorneys' Fees on Motion to Compel.

Accordingly, the Court granted Plaintiffs' First Contempt Motion insofar as

Defendant Rudolf Suter was ordered to pay, as required by the Court's December 24, 2014 Order Awarding Attorneys' Fees on Motion to Compel [Dkt. No. 141], Plaintiffs Peter Denton and Harvest Investors, L.P. the amount of $27,605.00 for payment of reasonable and necessary attorneys' fees under Rule 37(a)(5)(A) by November 9, 2015. *See* Dkt. No. 158 at 3. The Court's October 19, 2015 Order Granting Motion to Compel again explained that, "[a]s the Court advised Defendant at the hearing, failure to do so will subject Defendant to possible sanctions and/or civil and/or criminal penalties for contempt of court." *Id.* at 4.

On December 1, 2015, Plaintiffs filed their Second Contempt Motion, explaining that, "in the aftermath of this Honorable Court's October 19, 2015 Order, on November 2, 2015, (Ex. 1-A), Defendant Rudolph Suter served Supplemental Interrogatory Answers, however, they are woefully inadequate" as to Interrogatory Nos. 12 and 14 of Plaintiffs' First Set of Interrogatories and Interrogatory Nos. 50, 51, 55, 68, 71, 72, and 78 of Plaintiffs' Second Set of Interrogatories and that, "on November 9, 2015 Defendant Suter did not pay Plaintiffs $27,605.00 in attorneys fees as ordered by" the Court. Dkt. No. 160 at 1.

According to Plaintiffs, "[w]ith respect to Suter's attempt at supplementing his Interrogatory Answers, he merely refers to his previous inadequate answers and to documents produced in his Bankruptcy proceeding," and "[t]he problem is the previous answers were inadequate and the documents are not current and they do not contain all of the information required by many of the Interrogatories." *Id.* at 2.

Plaintiffs further report that, "[a]s opposed to complying with your Honor's

October 19, 2015 Order and pay Plaintiffs $27,605 in attorneys fees, November 9, 2015 came and went without Suter paying the attorney fee award set out in Your Honor's Order," and, "[i]nstead, Suter emailed the undersigned requesting that Plaintiffs accept some sort of unsecured payment in the future." *Id.* at 4.

Plaintiffs contend in their Second Contempt Motion that, since the time of the Court's deciding the First Contempt Motion, "Suter's continued defiance and refusal to comply now with the October 19, 2015 Order (Dkt. 158) compels civil and/or criminal penalties." *Id.* at 5. Plaintiffs assert that "Suter has been warned first by Bankruptcy Judge Stacy Jernigan and most recently by Your Honor both at the October 19, 2015 Hearing and in Your Honor's October 19, 2015 Order" and that, "[a]lthough Suter eventually became compliant with the Bankruptcy Court Orders, it was only after being threatened with incarceration." *Id.* According to Plaintiffs, "[i]t appears that incarceration is the only contempt penalty to which Suter responds," and "Suter should face monetary penalties of no less than $200 a day for his failure to comply with Your Honor's October 19, 2015 Order," which "monetary sanction/penalty should begin on November 9, 2015 and continue until he fully complies with the various court orders." *Id.* Plaintiffs further assert that "Suter should be incarcerated until he fully complies with the various court orders" and that, "in light of the threat that Suter, a Swiss citizen, will flee the United States to avoid complying with Your Honor's Court Orders, Suter should also be ordered to relinquish his passport until such time as he fully complies with the Orders of this Honorable Court." *Id.*

Plaintiffs also request in their Second Contempt Motion that the Court award

them "their costs and reasonable and necessary attorneys fees incurred in preparing and presenting" their Second Contempt Motion. *Id.* at 6.

In response to the Second Contempt Motion, Defendant Rudolf Suter contended that he "has done everything in his power to comply with the Court's orders and his discovery obligations in this matter"; that he "has expended considerable time and money collecting and producing the required documents and providing the answers"; and that he "has also tried very hard to comply with [the] Court's orders relating to prior sanctions awards, paying a total of $27,605.00 in sanctions to pay legal fees to Peter Denton and Harvest Investors, LP," and "has tried to get loans and offered Peter Denton and Harvest Investors L.P. to pay over time with funds owned by his employer to Suter for deferred pay." Dkt. No. 162 at 1.

Defendant further asserts that, in his "Chapter 7 case and the Rule 2004 Examination, Peter Denton and Harvest Investors L.P. asked the same questions and asked for the same documents as they do in the First and second motion[s] for sanctions," and Defendant "now requests that the Court waive the additional sanctions." *Id.* Defendant's response further describes the history of his compliance with discovery obligations in his bankruptcy case and appears to take issue with continued enforcement of certain Bankruptcy Court orders that are not before the Court in this case. *See id.* at 2-4. Finally, Defendant contends that Plaintiffs "have been copied with all the documents during the [Rule] 2004 Examination, all the documents and questions requested by [Plaintiffs] during this order were the same" and that "[i]t is unreasonable, excessive and a harassment to ask in a different court

again for the same discovery." *Id.* at 4.

In reply, Plaintiffs contend that, as the "Court can see, [Defendant's] Response is just the latest step in his pattern of ignoring Orders from this Honorable Court" and that, "[a]s is apparent from his continuing failure to comply with the November 4. 2013, December 24, 2014 and now October 19, 2015 Orders, it is clear that only a Contempt finding with appropriate penalties (i.e., incarceration, confiscation of his passport and monetary sanctions) will force Suter to comply." Dkt. No. 163 at 1. Plaintiffs' reply asserts that "Suter, who has not paid even one dime toward the Judgment against him, keeps carrying on with impunity: living large (a luxurious home that he shares with his current mistress, complete with luxury late model automobiles); and freely traveling all over the world; all the while funneling significant amounts of money (over $675,000 at last count) to his wife (estranged if you believe him) in Switzerland" and that "Suter is not some unfortunate down on his luck pauper who has been dealt a bad hand" but rather "a highly compensated Chief Executive who plays fast and loose with Texas garnishment law to not only thumb his nose at [Plaintiffs]; but to also thumb his nose to the United States judicial system." *Id.* at 2, 3.

Plaintiffs note that Defendant's response "entirely relies on acts that occurred in his bankruptcy proceeding and Suter does not address his failure to abide by Your Honor's Orders," which, according to Plaintiffs, "is indeed ironic because he was held in Contempt by Bankruptcy Judge Stacey Jernigan and he only complied with the bankruptcy court orders, including payment of monetary sanctions and attorney fees,

when Judge Jernigan threatened him with incarceration." *Id.* at 3. Plaintiffs assert that Defendant's written response "shows [] that, although very reluctant, he is perfectly capable of complying with court orders" but that he "is a man who has: 1) has avoided paying a multi-million dollar judgment against him for over four years; 2) delayed discovery, fought to oppose and then failed to comply with Your Honor's November 4, 2013 Order; 3) filed for Bankruptcy, which caused additional delay; 4) held in Contempt of the Bankruptcy Court for non-compliance with that court's orders; 5) agreed to waive seeking his discharge when the United States Trustee opposed his discharge in bankruptcy; and 6) once back in this Honorable Court, he has twice failed to comply with this Honorable Court's December 24, 2014 and October 19, 2015 Orders" and that "Suter cannot point to one Order of this Honorable Court with which he has complied." *Id.* at 3-4.

Plaintiffs further reply that, "although [they] probably could, [Plaintiffs are] not currently complaining about Suter's production of documents, which is what Suter's Response solely focuses on," and that, at this point, Plaintiffs want what they are "entitled to in the various Orders: 1) immediate payment of the attorneys fees award of $27,605...; and 2) that Suter must fully answer the 9 (down from 13) Interrogatories set out on pages 2-4 of [Plaintiffs'] Second Motion for Sanctions/Contempt," as well an order requiring Defendant to "pay any monetary sanction this Honorable Court imposes" on the Second Contempt Motion. *Id.* at 4.

In his response to the Second Contempt Motion, Defendant also asked the Court to move the hearing on Plaintiffs' Second Contempt Motion from January 4, 2016, as

set by the Court, to January 11, 2016 because Defendant "is currently traveling abroad and will be back in the USA on January 6th only." *Id.* at 1, 4. In response to Defendant's request and in an effort to ensure Defendant's appearance, and over Plaintiffs' objection, *see* Dkt. No. 163 at 2, the undersigned reset the hearing to January 8, 2016, a date after the date on which Defendant reported that he would return to the United States. *See* Dkt. No. 165. But, within a few hours of the 2:00 p.m. start time for the reset hearing, Defendant had delivered to the Clerk's office a copy of report from a doctor stating that Defendant could "[r]eturn to work in five days (laryngitis will prevent court appearance; may return on Tuesday)." Dkt. No. 167. The same report was apparently emailed to Plaintiffs' counsel before the hearing by an individual associated with Defendant.

Without any further communication with the Court, Defendant did not appear for the January 8, 2016 hearing, despite the undersigned's waiting until several minutes after 2:00 p.m. to begin. *See* Dkt. No. 166. The undersigned then convened and conducted a short hearing with Plaintiffs' counsel on the record. *See id.* Under the circumstances – after a continuance of the hearing to allow Suter to return from (according to his communications with the Court's staff) Europe, and after Defendant failed to appear as ordered and only belatedly sent to the Court a doctor's report that he had laryngitis – the undersigned does not believe that any further hearing is necessary or appropriate before issuing these findings, conclusions, and recommendation on Plaintiffs' Second Contempt Motion – to which Defendant was given the opportunity to, and did, respond in writing and as to which the Court gave

Defendant ample opportunity to appear for a hearing.

## Legal Standards

In a case in which, as here, the matter is referred to a magistrate judge under 28 U.S.C. § 636(b), 28 U.S.C. § 636(e)(6) provides that, "[u]pon the commission of any [act of contempt] – ... (B) in any other case or proceeding under subsection (a) or (b) of this section, or any other statute, where – ... (iii) the act constitutes a civil contempt, the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge."

"A party may be held in contempt if he violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts with knowledge of that order." *Whitfield v. Pennington*, 832 F.2d 909, 913 (5th Cir. 1987). "The judicial contempt power is a potent weapon" that should not be used unless a specific aspect of the court's order has been "clearly violated." *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 383 (5th Cir. 1999).

"Contempt is characterized as either civil or criminal depending on its 'primary purpose.'" *In re Collier*, 582 F. App'x 419, 522 (5th Cir. 2014). "If the purpose of the

sanction is to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal." *Id.* (internal quotation marks omitted). "A contempt order is civil in nature if the purpose of the order is (1) to coerce compliance with a court order or (2) to compensate a party for losses sustained as a result of the contemnor's actions." *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 290-91 (5th Cir. 2002).

To show that civil contempt is warranted, a moving party must establish "1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order." *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992). Intent is not an element of civil contempt; the issue is whether the alleged contemnor has complied with the court's order. *See Whitfield*, 832 F.2d at 913. The standard of proof for civil contempt is clear and convincing evidence, which is "that weight of proof which produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, of the truth of the precise facts of the case." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (internal quotation marks omitted).

"After the movant has shown a *prima facie* case, the respondent can defend against it by showing a present inability to comply with the subpoena or order." *Petroleos Mexicanos v. Crawford Enters.*, 826 F.2d 392, 401 (5th Cir. 1987). "Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action. It is settled, however, that in raising this defense, the defendant has a burden of production." *United States v. Rylander*, 460 U.S. 752, 757 (1983). Additionally, "[t]he respondent may avoid a contempt finding by

establishing that is has substantially complied with the order or has made reasonable efforts to comply." *In re Brown*, 511 B.R. 843, 849 (S.D. Tex. 2014) (citing *U.S. Steel Corp. v. United Mine Workers of Am., Dist. 20*, 598 F.2d 363, 368 (5th Cir. 1979)). And, "[e]ven if liability is established, the respondent may demonstrate mitigating circumstances that might persuade the Court to withhold the exercise of its contempt power." *Id.* (citing *Whitfield*, 832 F.2d at 914).

"Upon a finding of civil contempt, the Court has broad discretion to impose judicial sanctions that would coerce compliance with its orders and compensate the moving party for any losses sustained. The Court may impose a conditional fine, provided the amount is reasonably designed to force compliance without being punitive, and/or a fixed term of imprisonment, with the condition that the contemnor be released if he or she complies with the court order. The Court also may require that the contemnors pay reasonable attorney's fees incurred by the moving party in obtaining the contempt finding." *Mary Kay Inc. v. Designs by Deanna, Inc.*, No. 3:00-cv-1058-D, 2013 WL 6246484, at *4 (N.D. Tex. Dec. 3, 2013) (citations omitted); *see also Collier*, 582 F. App'x at 422 ("Imprisonment is an appropriate remedy for either civil or criminal contempt, depending on how it is assessed. If the prison term is conditional and coercive, the character of the contempt is civil; if it is backward-looking and unconditional it is criminal." (internal quotation marks and footnote omitted)).

## Analysis

The undersigned, pursuant to 28 U.S.C. §§ 636(b) and 636(e)(6), now certifies the following facts that, in the undersigned's opinion, show that the following complained-

of conduct by Defendant Rudolf Suter constitutes a civil contempt of the requirements of the Court's November 4, 2013 Order [Dkt. No. 94], December 24, 2014 Order Awarding Attorneys' Fees on Motion to Compel [Dkt. No. 141], and October 19, 2015 Order Granting Motion to Compel [Dkt. No. 158].

I.    Failure to Pay Court-Ordered Attorneys' Fees Award

In its December 24, 2014 Order Awarding Attorneys' Fees on Motion to Compel, the Court ordered that "Defendant Rudolf Suter must pay Plaintiffs Peter Denton and Harvest Investors, L.P. the amount of $27,605.00 for payment of reasonable and necessary attorneys' fees under Rule 37(a)(5)(A) by **February 22, 2015**." Dkt. No. 141 at 8. There is no dispute that Defendant did not do so. *See* Dkt. No. 158 at 3.

On Plaintiff's First Contempt Motion, the Court ordered Defendant Rudolf Suter "to pay, as required by the Court's December 24, 2014 Order Awarding Attorneys' Fees on Motion to Compel [Dkt. No. 141], Plaintiffs Peter Denton and Harvest Investors, L.P. the amount of $27,605.00 for payment of reasonable and necessary attorneys' fees under Rule 37(a)(5)(A) by **November 9, 2015**." *Id.* There is, again, no dispute that Defendant did not do so and has not done so. *See* Dkt. No. 162 at 1; Dkt. No. 163.

Defendant has not shown a present inability to comply with these orders. While any protestations that Defendant cannot afford to pay the fee award would not be credible, Defendant's written response to Plaintiffs' Second Contempt Motion does not even expressly contend that he is unable to pay. Rather, he states that he "has also tried very hard to comply with [the] Court's orders relating to prior sanctions awards, paying a total of $27,605.00 in sanctions to pay legal fees to Peter Denton and Harvest

Investors, LP," and "has tried to get loans and offered Peter Denton and Harvest Investors L.P. to pay over time with funds owned by his employer to Suter for deferred pay." Dkt. No. 162 at 1.

As Plaintiffs note in reply, "Suter is over ten (10) months in arrears for the original $27,605 awarded in the December 24, 2014 Order, twice missing court imposed deadlines," and, according to Plaintiffs, "it is particularly difficult to believe him here when he has systematically siphoned funds over $675,000 to his wife in Switzerland" and where, "when he previously faced the threat of incarceration by Judge Jernigan, Suter came up $28,685 in payments to his Bankruptcy Trustee and Denton." Dkt. No. 163 at 6-7. Plaintiffs further explain that they understandably have "no interest in dealing with Suter on taking a stake in money Suter's company allegedly owes him, particularly when Suter runs the company," and that, "[a]s a practical matter, all Suter would have to do is re-direct money that he has been funneling to his wife Delores in Switzerland to satisfy the Court Order," where Exhibit 3 to the reply "contains excerpts of deposition testimony of the Pro Fit Optix Chief Financial Officer about these systematic payments to his wife Delores in Switzerland." *Id.* at 7.

The undersigned finds that there is clear and convincing evidence that Defendant Rudolf Suter has, with knowledge of those orders, failed to comply with definite and specific court orders – the Court's December 24, 2014 Order Awarding Attorneys' Fees on Motion to Compel [Dkt. No. 141] and October 19, 2015 Order Granting Motion to Compel [Dkt. No. 158] – requiring Defendant to pay Plaintiffs Peter Denton and Harvest Investors, L.P. the amount of $27,605.00 for payment of

reasonable and necessary attorneys' fees under Federal Rule of Civil Procedure 37(a)(5)(A).

The undersigned further finds that Defendant has not paid the court-ordered fee award because he chooses not to do so and that the Court's entering yet another (third) order directing Defendant to pay the fee award would – absent a contempt order to coerce compliance – be unlikely to compel his compliance with the Court's orders. It is therefore appropriate to employ coercive sanctions under the judicial contempt power here where a specific aspect of the Court's orders has been "clearly violated." *Piggly Wiggly*, 177 F.3d at 383.

II.   <u>Failure to Fully Answer and Supplement Answers to Interrogatories</u>

As to Defendant's failure to fully answer or supplemental his answers to interrogatories as ordered, Plaintiffs' Second Contempt Motion focuses only on Defendant's supplemental answers to Interrogatory Nos. 12 and 14 of Plaintiffs' First Set of Interrogatories and Interrogatory Nos. 50, 51, 55, 68, 71, 72, and 78 of Plaintiffs' Second Set of Interrogatories.

As the Court previously explained in granting Plaintiffs' original Motion to Compel [Dkt. No. 24] as to each of these interrogatories:

> Federal Rule of Civil Procedure 69, which governs post-judgment asset discovery, provides, in part, that:
>> [i]n aid of the judgment or execution, the judgment creditor or a successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held.
> Under Rule 69, a judgment creditor is entitled to a wide range of

discovery concerning the assets and liabilities of a judgment debtor, and the scope of the rule is broad. *See British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A.*, No. 90-cv-2370, 2000 WL 713057, at *5 (S.D.N.Y. June 2, 2000). "A judgment creditor is therefore ordinarily entitled to a very thorough examination of a judgment debtor with respect to its assets, including discovery of the identity and location of any of the judgment debtor's assets, wherever they are located." *Id.* (internal quotation marks and citations omitted).

As several federal courts have noted, Rule 69 discovery can indeed resemble the proverbial fishing expedition, "but a judgment creditor is *entitled* to fish for assets of the judgment debtor." *Ryan Investment Corp. v. Pedregal de Cabo San Lucas*, No. 6-3219, 2009 WL 5114077, at *4 (N.D. Cal. Dec. 18, 2009) (citing cases).

Dkt. No. 94 at 5. The United States Court of Appeals for the Fifth Circuit has likewise explained that "[t]he scope of postjudgment discovery is very broad to permit a judgment creditor to discover assets upon which execution may be made." *F.D.I.C. v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995).

Plaintiffs contend that "[a]dequate Answers to the subject Interrogatories, under oath, are incredibly important to [Plaintiffs] because they are relevant to potential fraudulent transfer and garnishments actions" and that Plaintiffs are "entitled to the information requested in the subject Interrogatories through sworn answers by Suter under oath," where, "[a]s a practical matter, perjury would not lie against Suter in connection with his current Answers." Dkt. No. 163 at 4-5.

The undersigned will now address Defendant's answer and supplemental answer to each interrogatory at issue in turn.

A.     *Interrogatory No. 12 of Plaintiffs' First Set of Interrogatories*

This interrogatory asked: "Have you made any payment exceeding $1,000.00 to any person or entity during the last twenty-four months? If so, for each payment,

please state: (a) The date and amount of the payment; (b) The full name and complete address of the recipient; (c) The total amount owed the recipient before the payment was made; (d) The date on which the payment was due; (e) The balance due the recipient after the payment was made; and (f) The name of the person (representative of the company) who made the payment." Dkt. No. 91-1 at App. 22.

Defendant originally answered: "Defendant objects to this interrogatory because it is unreasonably burdensome, oppressive, and calculated to harass Defendant. Subject to this objection, Defendant directs Plaintiff to the bank records that he will produce and states that any payment in excess of $1,000.00 would be reflected in those records." *Id.*

In its November 4, 2013 Order, the Court granted Plaintiffs' Motion to Compel [Dkt. No. 24] as to this interrogatory; "overrule[d] Defendant's objection" because "[t]he $1,000 threshold and two-year time limitation is sufficiently tailored to avoid unreasonable burden, oppression, and harassment to Defendant"; and ordered "that Defendant must fully respond to Interrogatory No. 12" by December 2, 2013. Dkt. No. 94 at 14, 26.

There is no dispute that Defendant did not do so. *See* Dkt. No. 158 at 2. Accordingly, in an October 19, 2015 Order Granting Motion to Compel [Dkt. No. 158], the Court granted Plaintiffs' First Contempt Motion insofar as Defendant Rudolf Suter was ordered to fully answer or supplement his answers, and verify his answers under oath, to Interrogatory No. 12 of Plaintiffs' First Set of Interrogatories, as required by the Court's November 4, 2013 Order [Dkt. No. 94], by November 2, 2015. *See id.* at 2-3.

The Court's order further explained that, "[a]s the Court advised Defendant at the hearing, failure to do so will subject Defendant to possible sanctions and/or civil and/or criminal penalties for contempt of court." *Id.* at 3.

Defendant supplemented his answer to Interrogatory No. 12 as follows: "Defendant directs Plaintiff to the bank records he produced and states that any payment in excess of $1,000.00 are reflected in those records." Dkt. No. 160-2 at 3 of 10.

In their Second Contempt Motion, Plaintiffs contend that this supplemental answer "refers to produced documents, however, those documents are not current and they only contain the date and the amount of the particular payment" and "do not contain the information required by sub-parts (b)-(f)" and that "Suter must fully answer Interrogatory No. 12 under oath and not merely refer to dated documents that are not current." Dkt. No. 160 at 2. Plaintiffs further assert that, as to this interrogatory, "knowing who Suter is making payments to in excess of $1,000 and why he is making those payments is important for [Plaintiffs] to determine if Suter is again making fraudulent transfers." Dkt. No. 163 at 5.

The undersigned finds that Defendant still has not, as ordered, fully answered or supplemented his answer to Interrogatory No. 12 and notes that Defendant's supplemental answer is the same as his original answer that the Court already determined to be was incomplete and as a result of which the Court ordered Defendant to provide a full answer.

B.     *Interrogatory No. 14 of Plaintiffs' First Set of Interrogatories*

This interrogatory asked: "Do you maintain any account with any bank, savings and loan association, credit union, or postal savings department? If so, for each account, please state: (a) The full name and complete address of the institution holding the account; (b) The full name and number under which the account is maintained; (c) The balance of the account five calendar days before the day you received these interrogatories; and (d) The balance of the account on the day you answered these Interrogatories." Dkt. No. 91-1 at App. 23.

Defendant originally answered: "Please see documents produced in response to Request for Production No. 11." *Id.* Plaintiffs' Request for Production No. 11 sought production of "[a]ll records, checkbooks, canceled checks, registers, bank statements, ledgers and statement of accounts for the years 1995 to the present, evidencing demand deposits, certificates of deposit, accounts in credit unions, money market accounts or retirement accounts in your name or as trustee or which accounts are subject to withdrawal or control by you for which you claim or have claimed an interest since January 1, 1995." *Id.* at App. 73. Defendant responded: "Defendant incorporates the foregoing general objections. Upon agreement to the terms of a confidentiality agreement and entry of a corresponding order, Defendant will produce responsive documents." *Id.*

In its November 4, 2013 Order, the Court granted Plaintiffs' Motion to Compel [Dkt. No. 24] as to this interrogatory, noting that, in the parties' joint status report [Dkt. No. 90] on the Motion to Compel, "Defendant states that he 'has agreed to

produce additional documents regarding his bank accounts'" and that, "[b]ecause Defendant raises no objection to Interrogatory No. 14 in the [the parties' joint status report], Defendant must respond to the interrogatory fully" by December 2, 2013. Dkt. No. 94 at 14-15, 26 (quoting Dkt. No. 90 at 6).

There was no dispute that Defendant did not do so. *See* Dkt. No. 158 at 2. Accordingly, in an October 19, 2015 Order Granting Motion to Compel [Dkt. No. 158], the Court granted Plaintiffs' First Contempt Motion insofar as Defendant Rudolf Suter was ordered to fully answer or supplement his answers, and verify his answers under oath, to Interrogatory No. 14 of Plaintiffs' First Set of Interrogatories, as required by the Court's November 4, 2013 Order [Dkt. No. 94], by November 2, 2015. *See id.* at 2-3. The Court's order further explained that, "[a]s the Court advised Defendant at the hearing, failure to do so will subject Defendant to possible sanctions and/or civil and/or criminal penalties for contempt of court." *Id.* at 3.

Defendant supplemented his answer to Interrogatory No. 14 as follows: "Please see documents produced in the 2014 examination of the bankruptcy procedure and discovery. Defendant produced all documents requested in this interrogatory and in his possession." Dkt. No. 160-2 at 3 of 10.

In their Second Contempt Motion, Plaintiffs contend that this supplemental answer "again refers to produced documents, however, those documents are not current" and that "Suter must fully answer Interrogatory No. 14 under oath and not merely refer to dated documents that are not current." Dkt. No. 160 at 2. Plaintiffs further assert that they are "entitled to know what bank accounts Suter has today, and

the balances in those accounts 5 days before the verified Answer and on the date of the verified Answer"; that "[t]his is important for [Plaintiffs] to evaluate whether Suter has money that might be subject to garnishment and it could also assist [Plaintiffs] in identifying additional fraudulent transfers"; that, "[a]s noted in awe by Bankruptcy Judge Stacey Jernigan, Suter had over 50 bank accounts over a relatively short period of time," and "[t]he obvious inference is that Suter has engaged in some serious money movement to avoid paying [Plaintiffs]"; and that "[t]he bank statements [Defendant] produced in his bankruptcy proceeding are several months old and neither those bank statements nor Suter's previous inadequate Answers provide all of the information sought." Dkt. No. 163 at 5.

The undersigned finds that Defendant still has not, as ordered, fully answered Interrogatory No. 14, where he relies on documents that were produced (by his own account, *see* Dkt. No. 162 at 3) at least six months preceding his supplemental answer and where the interrogatory requests, among other things, the balance of the account on the day that Defendant answered the interrogatory.

## C.   *Interrogatory No. 50 of Plaintiffs' Second Set of Interrogatories*

This interrogatory asked: "Do you or your spouse maintain any business or personal account with any bank, savings and loan association, credit union, or postal savings department? If so, for each account please state: (a) the full name and complete address of the institution holding the account; (b) the full name and number under which the account is maintained; (c) the balance of the account five calendar days before the day you received these interrogatories; and (d) the balance of the account on

the day you answered these interrogatories." Dkt. No. 91-1 at App. 54.

Defendant originally answered: "I can only answer this question as to me; I am unable to answer this question as to my spouse. (1) Wells Fargo Bank; (2) Bank of America; and (3) Regions Bank." *Id.*

In its November 4, 2013 Order, the Court granted Plaintiffs' Motion to Compel [Dkt. No. 24] as to subpart (d) this interrogatory, noting that "Defendant states that he has produced documents that fully respond to subparts a-c of Interrogatory No. 50 and that subpart d is irrelevant"; that "Defendant does not explain why subpart d of the interrogatory is irrelevant"; and that, "[c]onsidering the very thorough examination that Plaintiffs are entitled to in postjudgment discovery, Defendant's objection is overruled" and ordering that "Defendant must respond fully to subpart d of Interrogatory No. 50" by December 2, 2013. Dkt. No. 94 at 18, 26 (internal quotation marks omitted).

There was no dispute that Defendant did not do so. *See* Dkt. No. 158 at 2. Accordingly, in an October 19, 2015 Order Granting Motion to Compel [Dkt. No. 158], the Court granted Plaintiffs' First Contempt Motion insofar as Defendant Rudolf Suter was ordered to fully answer or supplement his answers, and verify his answers under oath, to Interrogatory No. 50 of Plaintiffs' Second Set of Interrogatories, as required by the Court's November 4, 2013 Order [Dkt. No. 94], by November 2, 2015. *See id.* at 2-3. The Court's order further explained that, "[a]s the Court advised Defendant at the hearing, failure to do so will subject Defendant to possible sanctions and/or civil and/or criminal penalties for contempt of court." *Id.* at 3.

Defendant supplemented his answer to Interrogatory No. 50 as follows: "Defendant refers to the answer of interrogatory No 50, to Peter Denton's second request set of interrogatories. Defendant also refers to documents produced in the 2014 examination of the bankruptcy procedure and discovery. Defendant produced all documents requested in this interrogatory and in his possession." Dkt. No. 160-2 at 6-7 of 10.

In their Second Contempt Motion, Plaintiffs contend that this supplemental answer "refers to his prior answer to the Interrogatory and produced documents, however, that answer and those documents are not current" and "do not contain the balance of those accounts on the day Suter served his supplemental answer to Interrogatory No. 50" and "do not provide the information requested pertaining to Delores Suter, which is required pursuant to the November 4, 2013 Order." Dkt. No. 160 at 2. Plaintiffs assert that "Suter must fully answer Interrogatory No. 50 under oath and not merely refer to his previous inadequate answer and to dated documents that are not current." *Id.* Plaintiffs further argue that Defendant' supplemental answer "not only fail[s] for the overall deficiencies of referring to dated documents and previously submitted inadequate answers; but also they do not address the information sought pertaining to Delores. Over two years ago, Suter fought producing documents and information pertaining to Delores and he lost. He is obligated to truthfully and fully answer these Interrogatories under oath." Dkt. No. 163 at 6.

The undersigned finds that Defendant still has not, as ordered, fully answered Interrogatory No. 50, where he refers back to his original, deficient answer and also

relies on documents that were produced (by his own account, *see* Dkt. No. 162 at 3) at least six months preceding his supplemental answer and where subpart (d) of the interrogatory requests the balance of the account on the day that Defendant answered the interrogatory. But the Court's November 4, 2013 Order did not address any part of this interrogatory other than subpart (d) or, unlike as to other discovery requests, address Defendant's refusal to answer as to Dolores Suter. Accordingly, the undersigned concludes that those alleged deficiencies – as to subparts (a)-(c) or Defendant's spouse – in Defendant's supplemental answer do not violate any definite and specific court orders.

D.     *Interrogatory No. 51 of Plaintiffs' Second Set of Interrogatories*

This interrogatory asked: "Have you or your spouse maintained any business or personal account with any bank, savings and loan association, credit union, or postal savings department within the past five years? If so, for each account please state: (a) the full name and complete address of the institution holding the account; (b) the full name and number under which the account is maintained; (c) the balance of the account five calendar days before the day you received these interrogatories; and (d) the balance of the account on the day you answered these interrogatories." Dkt. No. 91-1 at App. 54.

Defendant originally answered: "I can only answer this question as to me; I am unable to answer this question as to my spouse. Credit Suisse, Lucerne, Switzerland...." *Id.*

In its November 4, 2013 Order, the Court granted Plaintiffs' Motion to Compel

[Dkt. No. 24] as to this interrogatory, stating that "Defendant states that he has answered the interrogatory as to himself but objects to answering as to Dolores Suter" and that, "[f]or the reasons stated above, Plaintiffs' motion to compel is GRANTED as to Interrogatory No. 51, and the Court ORDERS that Defendant fully answer this interrogatory" by December 2, 2013. Dkt. No. 94 at 18, 26.

There was no dispute that Defendant did not do so. *See* Dkt. No. 158 at 2. Accordingly, in an October 19, 2015 Order Granting Motion to Compel [Dkt. No. 158], the Court granted Plaintiffs' First Contempt Motion insofar as Defendant Rudolf Suter was ordered to fully answer or supplement his answers, and verify his answers under oath, to Interrogatory No. 51 of Plaintiffs' Second Set of Interrogatories, as required by the Court's November 4, 2013 Order [Dkt. No. 94], by November 2, 2015. *See id.* at 2-3. The Court's order further explained that, "[a]s the Court advised Defendant at the hearing, failure to do so will subject Defendant to possible sanctions and/or civil and/or criminal penalties for contempt of court." *Id.* at 3.

Defendant supplemented his answer to Interrogatory No. 51 as follows: "Defendant refers to the answer of interrogatory No 51, to Peter Denton's second request set of interrogatories. Defendant also refers to documents produced in the 2014 examination of the bankruptcy procedure and discovery. Defendant produced all documents requested in this interrogatory and in his possession." Dkt. No. 160-2 at 7 of 10.

In their Second Contempt Motion, Plaintiffs contend that this supplemental answer "refers to his prior answer to the Interrogatory and produced documents,

however, that answer and those documents are not current" and "do not provide the information requested pertaining to Delores Suter, which is required pursuant to the November 4, 2013 Order." Dkt. No. 160 at 3. Plaintiffs assert that "Suter must fully answer Interrogatory No. 51 under oath and not merely refer to a previous inadequate answer and to dated documents." *Id.*; *see also* Dkt. No. 163 at 6.

The undersigned finds that Defendant still has not, as ordered, fully answered Interrogatory No. 51, where he refers back to his original, deficient answer and also relies on documents that were produced (by his own account, *see* Dkt. No. 162 at 3) at least six months preceding his supplemental answer and where the interrogatory requests, among other things, the balance of the account on the day that Defendant answered the interrogatory. The undersigned further finds that Defendant still has not, as ordered, fully answered Interrogatory No. 51 as to his spouse.

E.    *Interrogatory No. 55 of Plaintiffs' Second Set of Interrogatories*

This interrogatory asked: "Does any person or entity owe you or your spouse money, including but not limited to promissory notes and accounts receivable? If so, for each debt please state: a. the full name and complete address of the debtor; and b. the amount and due date of the debt and to whom owed." Dkt. No. 91-1 at App. 56.

Defendant originally answered: "I can only answer this question; I am unable to answer this question as to my spouse. Sheena Winfield owes money to me. There is no note." *Id.*

In its November 4, 2013 Order, the Court granted Plaintiffs' Motion to Compel [Dkt. No. 24] as to this interrogatory, stating that "Defendant states that he has

answered the interrogatory as to himself but objects to answering as to Dolores Suter" and that, "[f]or the reasons stated above, Plaintiffs' motion to compel is GRANTED as to Interrogatory No. 55, and the Court ORDERS that Defendant fully answer this interrogatory" by December 2, 2013. Dkt. No. 94 at 18-19, 26.

There was no dispute that Defendant did not do so. *See* Dkt. No. 158 at 2. Accordingly, in an October 19, 2015 Order Granting Motion to Compel [Dkt. No. 158], the Court granted Plaintiffs' First Contempt Motion insofar as Defendant Rudolf Suter was ordered to fully answer or supplement his answers, and verify his answers under oath, to Interrogatory No. 55 of Plaintiffs' Second Set of Interrogatories, as required by the Court's November 4, 2013 Order [Dkt. No. 94], by November 2, 2015. *See id.* at 2-3. The Court's order further explained that, "[a]s the Court advised Defendant at the hearing, failure to do so will subject Defendant to possible sanctions and/or civil and/or criminal penalties for contempt of court." *Id.* at 3.

Defendant supplemented his answer to Interrogatory No. 55 as follows: "Defendant refers to the answer of interrogatory No 55, to Peter Denton's second request set of interrogatories. Defendant also refers to documents produced in the 2014 examination of the bankruptcy procedure and discovery. Defendant produced all documents requested in this interrogatory and in his possession." Dkt. No. 160-2 at 8 of 10.

In their Second Contempt Motion, Plaintiffs contend that this supplemental answer "refers to his prior answer to the Interrogatory and produced documents, however, that answer and those documents are not current" and "do not provide the

information requested pertaining to Delores Suter, which is required pursuant to the November 4, 2013 Order." Dkt. No. 160 at 3. Plaintiffs assert that "Suter must fully answer Interrogatory No. 55 under oath and not merely refer to a previous inadequate answer and to dated documents." *Id.*; *see also* Dkt. No. 163 at 6.

The undersigned finds that Defendant that Defendant still has not, as ordered, fully answered Interrogatory No. 55 as to his spouse while relying on documents that were produced (by his own account, *see* Dkt. No. 162 at 3) at least six months preceding his supplemental answer.

### F.     *Interrogatory No. 68 of Plaintiffs' Second Set of Interrogatories*

This interrogatory asked: "At any time in the last five years, has anyone taken an inventory of your or your spouse's property, either personal or business? If so, for each inventory, please state: a. the date of the inventory; b. the name and complete address of each person who made the inventory or supervised it; c. the name and complete address of each person or entity having a copy of the inventory; d. the contents of the inventory, copying it verbatim or, if you will do so without a court order, attaching a copy of the inventory to your answers; and e. the name(s) of the person(s) (you, your spouse, or both) whose property was inventoried." Dkt. No. 91-1 at App. 62.

Defendant originally answered: "I can only answer this question as to me and the answer is no. I am unable to answer this question as to my spouse." *Id.*

In its November 4, 2013 Order, the Court granted Plaintiffs' Motion to Compel [Dkt. No. 24] as to this interrogatory, stating that "Defendant states that he has answered the interrogatory as to himself but objects to answering as to Dolores Suter"

and that, "[f]or the reasons stated above, Plaintiffs' motion to compel is GRANTED as to Interrogatory No. 68, and the Court ORDERS that Defendant fully answer this interrogatory" by December 2, 2013. Dkt. No. 94 at 19, 26.

There was no dispute that Defendant did not do so. *See* Dkt. No. 158 at 2. Accordingly, in an October 19, 2015 Order Granting Motion to Compel [Dkt. No. 158], the Court granted Plaintiffs' First Contempt Motion insofar as Defendant Rudolf Suter was ordered to fully answer or supplement his answers, and verify his answers under oath, to Interrogatory No. 68 of Plaintiffs' Second Set of Interrogatories, as required by the Court's November 4, 2013 Order [Dkt. No. 94], by November 2, 2015. *See id.* at 2-3. The Court's order further explained that, "[a]s the Court advised Defendant at the hearing, failure to do so will subject Defendant to possible sanctions and/or civil and/or criminal penalties for contempt of court." *Id.* at 3.

Defendant supplemented his answer to Interrogatory No. 68 as follows: "Defendant refers to the answer of interrogatory No 68, to Peter Denton's second request set of interrogatories. Defendant also refers to documents produced in the 2014 examination of the bankruptcy procedure and discovery. Defendant produced all documents requested in this interrogatory and in his possession." Dkt. No. 160-2 at 8 of 10.

In their Second Contempt Motion, Plaintiffs contend that this supplemental answer "refers to his prior answer to the Interrogatory and produced documents, however, that answer and those documents are not current" and "do not provide the information requested pertaining to Delores Suter, which is required pursuant to the

November 4, 2013 Order." Dkt. No. 160 at 3. Plaintiffs assert that "Suter must fully answer Interrogatory No. 68 under oath and not merely refer to a previous inadequate answer and to dated documents." *Id.*; *see also* Dkt. No. 163 at 6.

The undersigned finds that Defendant still has not, as ordered, fully answered Interrogatory No. 68 as to his spouse while relying on documents that were produced (by his own account, *see* Dkt. No. 162 at 3) at least six months preceding his supplemental answer.

G.    *Interrogatory No. 71 of Plaintiffs' Second Set of Interrogatories*

This interrogatory asked: "At any time in the last five years, have you or your spouse used the services of an accountant, bookkeeper, or certified public accountant or had these services employed in behalf of you or your spouse? If so, for each such person, please state: a. the full name and complete address of the person; b. the dates during which the services were employed; c. a description of the services the person performed; d. the contents of resulting reports, copying them verbatim or, if you will do so without a court order, attaching a copy of each report to your answers; and e. the name(s) of the person(s) (you, your spouse, or both) for whom the services were performed." Dkt. No. 91-1 at App. 64.

Defendant originally answered: "I can only answer this question as to me; I am unable to answer this question as to my spouse. KPTIG, Fug, Switzerland, Ms. Frank Laupert." *Id.*

In its November 4, 2013 Order, the Court granted Plaintiffs' Motion to Compel [Dkt. No. 24] as to this interrogatory, stating that "Defendant states that he has

answered the interrogatory as to himself but objects to answering as to Dolores Suter" and that, "[f]or the reasons stated above, Plaintiffs' motion to compel is GRANTED as to Interrogatory No. 71, and the Court ORDERS that Defendant fully answer this interrogatory" by December 2, 2013. Dkt. No. 94 at 19, 26.

There was no dispute that Defendant did not do so. *See* Dkt. No. 158 at 2. Accordingly, in an October 19, 2015 Order Granting Motion to Compel [Dkt. No. 158], the Court granted Plaintiffs' First Contempt Motion insofar as Defendant Rudolf Suter was ordered to fully answer or supplement his answers, and verify his answers under oath, to Interrogatory No. 71 of Plaintiffs' Second Set of Interrogatories, as required by the Court's November 4, 2013 Order [Dkt. No. 94], by November 2, 2015. *See id.* at 2-3. The Court's order further explained that, "[a]s the Court advised Defendant at the hearing, failure to do so will subject Defendant to possible sanctions and/or civil and/or criminal penalties for contempt of court." *Id.* at 3.

Defendant supplemented his answer to Interrogatory No. 71 as follows: "Defendant refers to the answer of interrogatory No 71, to Peter Denton's second request set of interrogatories. Defendant also refers to documents produced in the 2014 examination of the bankruptcy procedure and discovery. Defendant produced all documents requested in this interrogatory and in his possession." Dkt. No. 160-2 at 9 of 10.

In their Second Contempt Motion, Plaintiffs contend that this supplemental answer "refers to his prior answer to the Interrogatory and produced documents, however, that answer and those documents are not current" and "do not provide the

information requested pertaining to Delores Suter, which is required pursuant to the November 4, 2013 Order." Dkt. No. 160 at 3. Plaintiffs assert that "Suter must fully answer Interrogatory No. 71 under oath and not merely refer to a previous inadequate answer and to dated documents." *Id.* at 4; *see also* Dkt. No. 163 at 6.

The undersigned finds that Defendant that Defendant still has not, as ordered, fully answered Interrogatory No. 71 as to his spouse while relying on documents that were produced (by his own account, *see* Dkt. No. 162 at 3) at least six months preceding his supplemental answer.

### H.   Interrogatory No. 72 of Plaintiffs' Second Set of Interrogatories

This interrogatory asked: "Do you or your spouse have any charge accounts or credit cards? If so, for each please state: a. the full name and complete address of the establishment carrying the account and issuing the card; b. the account number or credit card number; c. the name in which the account or card is listed; and d. the balance now owed on the account or card." Dkt. No. 91-1 at App. 64.

Defendant originally answered: "I can only answer this question as to me and the answer is no. I am unable to answer this question as to my spouse." *Id.*

In its November 4, 2013 Order, the Court granted Plaintiffs' Motion to Compel [Dkt. No. 24] as to this interrogatory, stating that "Defendant states that he has answered the interrogatory as to himself but objects to answering as to Dolores Suter" and that, "[f]or the reasons stated above, Plaintiffs' motion to compel is GRANTED as to Interrogatory No. 72, and the Court ORDERS that Defendant fully answer this interrogatory" by December 2, 2013. Dkt. No. 94 at 19, 26.

There was no dispute that Defendant did not do so. *See* Dkt. No. 158 at 2. Accordingly, in an October 19, 2015 Order Granting Motion to Compel [Dkt. No. 158], the Court granted Plaintiffs' First Contempt Motion insofar as Defendant Rudolf Suter was ordered to fully answer or supplement his answers, and verify his answers under oath, to Interrogatory No. 72 of Plaintiffs' Second Set of Interrogatories, as required by the Court's November 4, 2013 Order [Dkt. No. 94], by November 2, 2015. *See id.* at 2-3. The Court's order further explained that, "[a]s the Court advised Defendant at the hearing, failure to do so will subject Defendant to possible sanctions and/or civil and/or criminal penalties for contempt of court." *Id.* at 3.

Defendant supplemented his answer to Interrogatory No. 72 as follows: "Defendant refers to the answer of interrogatory No 72, to Peter Denton's second request set of interrogatories. Defendant also refers to documents produced in the 2014 examination of the bankruptcy procedure and discovery. Defendant produced all documents requested in this interrogatory and in his possession." Dkt. No. 160-2 at 10 of 10.

In their Second Contempt Motion, Plaintiffs contend that this supplemental answer "refers to his prior answer to the Interrogatory and produced documents, however, that answer and those documents are not current" and "do not provide the information requested pertaining to Delores Suter, which is required pursuant to the November 4, 2013 Order." Dkt. No. 160 at 4. Plaintiffs assert that "Suter must fully answer Interrogatory No. 72 under oath and not merely refer to a previous inadequate answer and to dated documents." *Id.*; *see also* Dkt. No. 163 at 6.

-36-

The undersigned finds that Defendant still has not, as ordered, fully answered Interrogatory No. 72 as to his spouse while relying on documents that were produced (by his own account, *see* Dkt. No. 162 at 3) at least six months preceding his supplemental answer.

I.     *Interrogatory No. 78 of Plaintiffs' Second Set of Interrogatories*

This interrogatory asked: "Other than the account with Bank of America, which is reflected in the bank statements you have produced thus far, are there any other accounts you have held with any bank or institution in the United States in the last five years? If so, please identify: a. the name of the bank or institution; b. the date the account was opened; c. the date the account was closed; d. the amount in the account at the time it was closed; e. where the money was transferred, if it was transferred; f. the reason for closing the account; g. the bank account number; and h. name in which the account was held." Dkt. No. 91-1 at App. 65-66.

Defendant originally answered: "Wells Fargo and Regions Bank." *Id.* at App. 66.

In its November 4, 2013 Order, the Court granted Plaintiffs' Motion to Compel [Dkt. No. 24] as to this interrogatory, stating that "Defendant states that he has produced records that provide the details regarding the accounts at issue in his response" and that, "[t]o the extent that Defendant has not fully responded to Interrogatory No. 78, Defendant is ordered to do so" by December 2, 2013, "and, to that extent, Plaintiffs' motion to compel is GRANTED." Dkt. No. 94 at 20, 26.

There was no dispute that Defendant did not do so. *See* Dkt. No. 158 at 2. Accordingly, in an October 19, 2015 Order Granting Motion to Compel [Dkt. No. 158],

the Court granted Plaintiffs' First Contempt Motion insofar as Defendant Rudolf Suter was ordered to fully answer or supplement his answers, and verify his answers under oath, to Interrogatory No. 78 of Plaintiffs' Second Set of Interrogatories, as required by the Court's November 4, 2013 Order [Dkt. No. 94], by November 2, 2015. *See id.* at 2-3. The Court's order further explained that, "[a]s the Court advised Defendant at the hearing, failure to do so will subject Defendant to possible sanctions and/or civil and/or criminal penalties for contempt of court." *Id.* at 3.

Defendant supplemented his answer to Interrogatory No. 78 as follows: "Defendant refers to the answer of interrogatory No 78, to Peter Denton's second request set of interrogatories. Defendant also refers to documents produced in the 2014 examination of the bankruptcy procedure and discovery. Defendant produced all documents requested in this interrogatory and in his possession." Dkt. No. 160-2 at 10 of 10.

In their Second Contempt Motion, Plaintiffs contend that this supplemental answer "refers to his prior answer to the Interrogatory and produced documents, however, that answer and those documents are not current" and "do not provide the information requested in subparts (d) (where the money was transferred); and (e) (the reason for closing the account pertaining to Delores Suter)." Dkt. No. 160 at 4. Plaintiffs assert that "Suter must fully answer Interrogatory No. 78 under oath and not merely refer to a previous inadequate answer and to dated documents that are not current." *Id.*

The undersigned finds that Defendant still has not, as ordered, fully answered

Interrogatory No. 78, where he relies on documents that were produced (by his own account, *see* Dkt. No. 162 at 3) at least six months preceding his supplemental answer and – according to Plaintiffs' account, which the undersigned accepts as credible – has not provided the information requested by subparts (d) and (e).

More generally, as to all of these court-ordered supplemental interrogatory answers, Defendant responded to the Second Contempt Motion that he "has done everything in his power to comply with the Court's orders and his discovery obligations in this matter"; that he "has expended considerable time and money collecting and producing the required documents and providing the answers"; that, in his "Chapter 7 case and the Rule 2004 Examination, [Plaintiffs] asked the same questions and asked for the same documents as they do in the First and second motion[s] for sanctions"; that Plaintiffs "have been copied with all the documents during the [Rule] 2004 Examination, all the documents and questions requested by [Plaintiffs] during this order were the same"; and that "[i]t is unreasonable, excessive and a harassment to ask in a different court again for the same discovery." Dkt. No. 162 at 2-4.

The undersigned cannot accept Defendant's assessment of his compliance with Plaintiffs' Rule 69(a)(2) postjudgment discovery requests in this case and, rather, agrees with Plaintiffs' assessment that "[a] document production in the Bankruptcy Court is different from ... answering Interrogatories in this action" and that Defendant's response "does not address his inadequate Interrogatory Answers," which, as explained above, "simply refer to now-dated documents produced in his Bankruptcy and his previous Interrogatory Answers that [this Court] held were inadequate." Dkt.

No. 163 at 4.

Based on the facts set forth above, the undersigned finds that there is clear and convincing evidence that Defendant Rudolf Suter has, with knowledge of those orders, failed to comply with definite and specific court orders – the Court's the Court's November 4, 2013 Order [Dkt. No. 94] and October 19, 2015 Order Granting Motion to Compel [Dkt. No. 158] – requiring Defendant to fully answer or supplement his answers to Interrogatory Nos. 12 and 14 of Plaintiffs' First Set of Interrogatories and Interrogatory Nos. 50, 51, 55, 68, 71, 72, and 78 of Plaintiffs' Second Set of Interrogatories.

Based on the record before the Court, the undersigned further finds that Defendant has not shown that he is presently unable to comply with, or has substantially complied or made reasonable efforts to comply with, the Court's orders requiring him to fully answer these postjudgment interrogatories directed to identifying Defendant's assets and liabilities to aid Plaintiffs in executing on this Court's Final Judgment in their favor. And the undersigned likewise finds that entering a third order directing Defendant to fully answer these interrogatories would – absent a contempt order to coerce compliance – be unlikely to compel his compliance. Rather, this is one of the rare instances in which the "potent weapon" of the judicial contempt power should be used to coerce compliance where a specific aspect of the Court's orders has been "clearly violated." *Piggly Wiggly*, 177 F.3d at 383.

## Recommendation

Defendant Rudolf Suter should be cited to appear before United States District

Judge David C. Godbey on a date that the Court will set and show cause why he should not be held in civil contempt for violating the Court's November 4, 2013 Order [Dkt. No. 94], December 24, 2014 Order Awarding Attorneys' Fees on Motion to Compel [Dkt. No. 141], and October 19, 2015 Order Granting Motion to Compel [Dkt. No. 158] and be subject to appropriate judicial sanctions to coerce compliance with the Court's orders and/or compensate Plaintiffs Peter Denton and Harvest Investors, L.P. for any losses sustained as a result of Defendant Rudolf Suter's noncompliance. Plaintiffs Peter Denton and Harvest Investors, L.P.'s Second Motion for Sanctions, Contempt and to Compel [Dkt. No. 160] should, accordingly, be granted to the extent that the Court finds Defendant Rudolf Suter in contempt and imposes appropriate judicial sanctions.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v.*

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 19, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE